THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. _____

| STEWART ENGINEERING, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| | ) | COMPLAINT FOR |
| CONTINENTAL CASUALTY | ) | DECLARATORY RELIEF |
| COMPANY, ZURICH AMERICAN | ) | |
| INSURANCE COMPANY and | ) | |
| SKANSKA USA BUILDING, INC., | ) | |
| Defendant. | ) | |

Plaintiff Stewart Engineering, Inc. ("Stewart") as its Complaint against Defendants Continental Casualty Company ("CNA"), Zurich American Insurance Company ("Zurich") and Skanska USA Building, Inc. ("Skanska"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, in which Stewart seeks an adjudication of its rights and obligations under the certain professional liability insurance policy issued by CNA. Stewart seeks a declaration that CNA is obligated to defend and indemnify Stewart in connection with multiple claims against Stewart relating to the separate collapses of two pedestrian bridges on November 13, 2014 and November 14, 2014 located on the Wake Technical Community College Northern Campus in Raleigh, North Carolina.

2. Declaratory judgment is appropriate because the multiple claims asserted against Stewart allege damages that far exceed the $3,000,000 per-claim limit of the Policy rendering the issue of available coverage of relevant and urgent consideration. Specifically, declaratory judgment is appropriate because CNA disputes that it has any obligation to indemnify Stewart up to the

aggregate limit of $5,000,000, creating an actual and justiciable controversy between CNA and Stewart. This Court's determination of the available amount of coverage under the Policy would settle the controversy and serve the important purpose of providing Stewart with certainty regarding the amount of insurance coverage available to resolve the wrongful death, personal injury and property damage claims. Zurich and Skanska are named in this action in order to adjudicate any rights they have, or allegedly have, under the insurance polices at issue.

## PARTIES

3. Stewart Engineering, Inc. ("Stewart") is a professional corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Raleigh, North Carolina.

4. Stewart provides professional engineering, surveying and landscape architectural services, including engineering and design services for the construction of pedestrian bridges.

5. Upon information and belief, Continental Casualty Company ("CNA") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois.

6. Upon information and belief, at all times relevant to this Complaint, CNA was licensed and/or authorized by various states, including North Carolina, to sell insurance policies covering project-related risks, such as professional liability insurance policies for architects and engineers; this type of policy is at issue in this Complaint.

7. Upon information and belief, Skanska USA Building, Inc. ("Skanska") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New Jersey.

8. Upon information and belief, Zurich American Insurance Company ("Zurich") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Illinois.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1332(a) and (c), this Court has subject matter jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. This Court has personal jurisdiction over CNA because it has minimum contacts with the State of North Carolina and issues insurance policies to individuals and companies in North Carolina.

11. This Court has personal jurisdiction over Skanska because it has minimum contacts with the state of North Carolina, has offices in the state of North Carolina, and has alleged claims against Stewart related to a construction project located in Raleigh, North Carolina.

12. This Court has personal jurisdiction over Zurich because it has minimum contacts with the State of North Carolina, issues insurance policies to individuals and companies in North Carolina, and has alleged a subrogation interest in Skanska's alleged claims related to a construction project in Raleigh, North Carolina.

13. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. §1391(a) because Stewart has its principal office in this district, CNA sold insurance in this district, CNA insured the subject design projects involving Stewart that took place within this district, and a substantial part of the alleged events or omissions giving rise to the claims against Stewart occurred in this district.

## BACKGROUND AND FACTS

14. The allegations in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

15. Wake Technical Community College ("Wake Tech") contracted with Pearce Brinkley Cease & Lee, P.A. ("PBCL") to furnish architectural design services for the design of Building F, Regional Plant #2 and two pedestrian bridges located on the Wake Tech North Campus (the "Wake Tech Project") located in Raleigh, Wake County, North Carolina.

16. Wake Tech contracted with Skanska to provide Construction Management services for the Wake Tech Project.

17. On February 11, 2013, PBCL contracted with Stewart for the furnishing of structural engineering design services for the Wake Tech Project.

18. On or about March 28, 2013, PBCL merged with Clark, Nexsen, Owen, Barbieri & Gibson, P.C. ("Clark Nexsen"), a Virginia Professional Corporation.

19. In or around April 2013, Wake Tech agreed to re-assign PBCL's contract to Clark Nexsen.

20. In turn, PBCL assigned the Stewart contract to Clark Nexsen.

21. In early 2013, Stewart began the design development phase for a pedestrian bridge with three long Glue Laminated ("Glulam") truss spans, kingposts, tension cables and central steel v-column platforms, which crossed the Neuse River buffer and connected the plaza between Parking Deck 1 and Parking Deck 2 to Building F ("Bridge 2").

22. In or around October 2013, Skanska and Clark Nexsen requested bids for an additional pedestrian bridge with a single long Glulam span, kingpost, tension cables and steel v-column

abutments at each end. This bridge also crossed the Neuse River buffer and connected Building F to Building L ("Bridge 1").

23. In or around October 2014, the erection sequence for Bridges 1 and 2 commenced.

24. On November 13, 2014, Bridge 1 collapsed while workers were pouring the concrete slab for the bridge. The collapse of Bridge 1 resulted in one fatality and four injured workers.

25. On or about early morning of November 14, 2014, Bridge 2 collapsed. There were no workers on Bridge 2 when it collapsed and no reported injuries.

26. At the time of the separate collapses of Bridge 1 and Bridge 2, each pedestrian bridge was under construction.

## CNA Professional Liability Policy

27. CNA issued to named insured, Stewart Engineering, Inc., a professional liability policy with the effective period of April 15, 2014 to April 15, 2015 (the "Policy"). The Policy provides Limits of Liability of $3,000,000 each Claim and $5,000,000 in the aggregate.

28. The Policy is an "eroding" policy that deducts the costs of defense from the available amount of coverage.

29. The Insuring Agreement of the Policy provides:
   I. **COVERAGE AGREEMENTS**

   A. We will pay all amounts in excess of the Deductible up to the Limit of Liability that you become legally obligated to pay as a result of:

   a. a **wrongful act**,

   that results in a **claim** anywhere in the world, provided that on the Knowledge Date set forth in Item 4. on the Declarations none of **your** officers, directors, principals, partners, or insurance managers knew of any act, error, omission, or event that could reasonably be expected to become the basis of that **claim**.

30. The policy defines "**bodily injury**" as "bodily injury, sickness, disease, mental anguish, or emotional distress sustained by a person, including death resulting from any of these at any time."

31. The Policy defines "**claim**" as a "demand for money or services, naming **you** and alleging a **wrongful act** or **pollution incident**."

32. The Policy defines "**professional services**" as "those services that **you** perform for others on behalf of a **Named Insured** in **your** practice as an architect, engineer, land surveyor, landscape architect, construction manager, scientist, or technical consultant."

33. The Policy defines "**Property Damage**" as:

   1. physical injury to, damage to, or destruction of tangible property, electronic data, soil, surface water, groundwater, plants, or animals, including the resulting loss of use thereof;

   2. clean-up costs incurred by a third party or mandated by any governmental entity; or

   3. loss of use of tangible property that has not been physically injured or destroyed.

34. The Policy defines "**Related Claims**" as:

   1. a single **wrongful act**;

   2. multiple **wrongful acts** that are logically or causally connected by any common fact, situation, event, transaction, advice, or decision;

35. The Policy defines "**wrongful act**" as "an error, omission, or other act that causes liability in the performance of **professional services** for others by **you** or by any person on entity, including joint ventures, for whom **you** are liable."

6
Case 5:15-cv-00377-D   Document 1   Filed 07/31/15   Page 6 of 12

36. With respect to "**Limits of Liability / Deductible**," the Policy provides:

    A. Limits of Liability

        1. The Limit of Liability shown under Item 6.a on the Declarations is the maximum we will pay for any **claim** first made against **you** and reported to us during the **policy year**.

        2. The aggregate Limit of Liability shown under Item 6.b on the Declarations is the maximum we will pay for all **claims** first made against you and reported to us during the **policy year**.

        All Limits of Liability apply as excess over any Deductible amount. The **policy year** Limits of Liability as set forth above may not be aggregated or transferred, in whole or in part, so as to provide any additional coverage with respect to **claims** first made or deemed made during any other **policy year**. If the Limits of Liability as specified above for any **policy year** are exhausted, our obligation for that **policy year** shall be deemed completely fulfilled and extinguished.

        3. All **related claims** shall be considered a single **claim** first made and reported to us within the **policy year** in which the earliest of the **related claims** was first made and reported to us.

        4. **Claim expenses** are subject to and included within the applicable Limit of Liability

### The Rosales-Nava/Lopez Claims

37. On or about December 3, 2014, Stewart received a Notice of Preservation of Evidence letter from the attorney representing the Estate of Jose Alberto Rosales-Nava ("Rosales-Nava") and Omar Lopez ("Lopez") regarding the pedestrian bridge collapse incident occurring on November 13, 2014.

7
Case 5:15-cv-00377-D   Document 1   Filed 07/31/15   Page 7 of 12

38. On or about June 5, 2015, Stewart received a Confidential Settlement Demand Letter from the attorney for Rosales-Nava and Lopez alleging wrongful death and personal injury claims against Stewart resulting from the collapse of Bridge 1. ("Rosales-Nava/Lopez Claims").

39. The Rosales-Nava/Lopez Claims allege over $10,000,000 in damages against Stewart for liability.

40. CNA was timely notified of the Rosales-Nava/Lopez claims and Stewart provided CNA with copies of the December 3, 2014 and June 5, 2015 letters.

41. Pursuant to the Policy, CNA must defend and indemnify Stewart against the Rosales-Nava/Lopez Claims within the applicable limits of insurance.

## The Chaves/Hernandez/Vargas Claims

42. On or about December 15, 2014, Stewart received a letter from the attorney representing Carlos Chaves Rojas ("Chaves"), Jose M. Hernandez Salinas ("Hernandez") and Cesar Vargas Felix ("Vargas") regarding the pedestrian bridge collapse incident occurring on November 13, 2014.

43. On or about June 7, 2015, Stewart received a Cover Letter and three Demand Letters from the attorney representing Chaves, Hernandez and Vargas alleging personal injury claims against Stewart resulting from the collapse of Bridge 1. ("Chaves/Hernandez/Vargas Claims").

44. The Chaves/Hernandez/Vargas Claims allege over $3,000,000 in damages against Stewart for liability.

45. CNA was timely notified of the Chaves/Hernandez/Vargas Claims and Stewart provided CNA with copies of the December 15, 2014 and June 7, 2015 letters.

46. Pursuant to the Policy, CNA must defend and indemnity Stewart against the Chaves/Hernandez/Vargas Claims within the applicable limits of insurance.

## The Skanska/Zurich Claims

47. Upon information and belief, Zurich Insurance issued a Builder's Risk Policy to Skanska for the Wake Tech Project.

48. At the time of the collapses of Bridges 1 and 2, Skanska alleges it was the owner of and bore the risk of loss for the Glulam trusses and related components comprising Bridge 1, the Glulam trusses and related components of Bridge 2, and the un-erected Glulam trusses for Bridge 2.

49. On or about March 2, 2015, Stewart received a notice letter from the attorney representing Zurich alleging a subrogation interest in Skanska's alleged claims based on property damage and cleanup costs resulting from the collapses of Bridge 1 and Bridge 2.

50. On or about June 9, 2015, Stewart received a Settlement Demand Letter setting forth the amounts Zurich has paid, or will pay, for damages associated with the collapses of Bridge 1 and Bridge 2 (the "Skanska/Zurich Claims").

51. The Skanska/Zurich Claims allege over $4,800,000 in damages against Stewart for liability.

52. CNA was timely notified of the Skanska/Zurich Claims and Stewart provided CNA with copies of the March 2, 2014 and June 9, 2015 letters.

53. Pursuant to the Policy, CNA must defend and indemnity Stewart against the Skanska/Zurich Claims within the applicable limits of insurance.

## CNA's Decision on Available Insurance Coverage

54. On about April 29, 2015, counsel for Stewart contacted CNA regarding its coverage for claims made against the Policy regarding the Project; CNA informed counsel for Stewart that the single claim limit of $3,000,000 would apply to all claims.

55. On or about May 27, 2015, CNA reiterated its position regarding the limit of liability via email to counsel for Stewart.

56. Stewart contests CNA's interpretation of "logically and causally connected by any common fact, situation, event, transaction, advice, or decision" as it applies to the Policy and its amount of coverage, leading to this Complaint and request for a declaratory judgment.

## FIRST CAUSE OF ACTION
### Declaratory Judgment against CNA
### (Amount of Coverage)

57. The allegations of all foregoing paragraphs are hereby incorporated by reference and realleged as if fully set forth herein.

58. CNA has failed to provide Stewart with the aggregate $5,000,000 of insurance coverage, less applicable deductibles, that is applicable in response to multiple claims made against the Policy.

59. Stewart submits that the Policy provision defining "related claims" as "multiple wrongful acts that are logically or causally connected by any common fact, situation, event, transaction, advice, or decision" is ambiguous and is subject to at least two different interpretations, at least one of which favors Stewart's interpretation that the aggregate coverage limit of $5,000,000 is available and, accordingly, the provision, which was drafted by or on behalf of CNA is ambiguous on its face, which ambiguity should be construed against CNA and in favor of Stewart.

60. Alternatively, even if the court finds the above Policy provision to be unambiguous, there are two or more claims arising from multiple wrongful acts that are not logically or causally connected by any common fact, situation, event, transaction, advice or decision.

10
Case 5:15-cv-00377-D   Document 1   Filed 07/31/15   Page 10 of 12

61. The damages demanded by the Rosales-Nava/Lopez Claims, the Chaves/Hernandez/Vargas Claims, and the Skanska/Zurich Claims far exceed the $3,000,000 per-claim limit of the Policy rendering the issue of available coverage of relevant and urgent consideration.

## SECOND CAUSE OF ACTION
### Breach of Contract against CNA

62. The averments of all foregoing paragraphs are hereby incorporated by reference and realleged as if fully set forth herein.

63. Stewart is entitled to up to $5,000,000, less applicable deductibles, in available insurance coverage under the Policy because multiple, unrelated claims are involved.

64. CNA has refused to provide up to $5,000,000 in available insurance coverage under the Policy.

65. As a result, CNA has breached its obligation under the Policy, causing Stewart to incur damages, including the unavailability of an additional $2,000,000 in coverage and the expenditure of sums in excess defense costs made necessary by CNA's reservations of rights and refusal to provide full coverage afforded under the Policy for multiple unrelated claims.

WHEREFORE, Plaintiff Stewart Engineering, Inc. respectfully requests that judgment be entered in its favor and against Continental Casualty Company declaring that: (1) the aggregate limit of available insurance under the Policy, up to $5,000,000, less applicable deductibles, is available to resolve the Rosales-Nava/Lopez Claims, the Chaves/Hernandez/Vargas Claims, and the Skanska/Zurich Claims; and that (2) Continental Casualty Company must pay Stewart's excess defense costs made necessary by the breach of contract, along with any incidental, consequential, and other damages, including attorney's fees, costs, and interest, as provided by the agreement and by law, plus any other relief this Court deems just and proper.

This the 31st day of July, 2015.

                                       SAFRAN LAW OFFICES

                                       */s/ Stephen P. Safran*
                                       Stephen P. Safran
                                       N.C. State Bar No. 38475
                                       P.O. Box 587
                                       Raleigh, NC 27602
                                       Telephone: (919) 828-1396
                                       Facsimile: (919) 828-7993
                                       stephen@safranlaw.com